IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

GEOFF FLAUM,

                 Plaintiff,              Case No. 3:10 CV 593

    -vs-

                                                  MEMORANDUM OPINION

OMNISOURCE CORPORATION,

                 Defendant.

KATZ, J.

       Plaintiff Geoff Flaum sued his former employer Defendant OmniSource Corporation, ("OmniSource"), asserting that OmniSource breached Flaum's employment contract by terminating him without sufficient cause (Count I). Flaum also asserts a claim for promissory estoppel (Count II), seeking to enforce an alleged oral promise made by OmniSource to employ Flaum beyond the initial term of his contract. OmniSource has moved for summary judgment on all claims. (Doc. 39). For the reasons stated herein, OmniSource's motion is granted as to Flaum's promissory estoppel claim. OmniSource's motion is denied as to Flaum's breach of contract claim.

**I. Background**

       Flaum initially worked for OmniSource as an Industrial Marketing Representative from October 1985 until May 2002 when Flaum voluntarily ended his employment.

       In December 2003, Flaum and OmniSource began negotiating a new employment agreement. Flaum and OmniSource's then Chief Operating Officer, Daniel Rifkin (currently OmniSource's President), ultimately executed a written agreement ("Agreement") dated May 18, 2004, whereby Flaum would work for OmniSource as a Senior Marketing Representative in OmniSource's Northern Ohio region. The Agreement would last for a period of five years,

beginning on June 1, 2004. The Agreement provided for an annual bonus that would be determined according to OmniSource's incentive bonus program, but would in any event pay a minimum of fifteen percent of Flaum's salary. The Agreement provided that Flaum could be terminated for cause at any time. Flaum could also be terminated without cause, but such a termination would require OmniSource to pay severance equal to the compensation remaining for the balance of the Agreement. Indiana law governs the Agreement.

In addition to the written Agreement, Flaum alleges that Rifkin orally promised that Flaum's employment would be guaranteed with OmniSource from June 1, 2009 (when the written Agreement expired) through April 14, 2020 (when Flaum turned age sixty-five). Specifically, Flaum alleges that Rifkin said, "Geoff, you are going to retire from OmniSource," that Rifkin said the contract will renew every year after the initial five year term, and also that the contract was "evergreen." Flaum alleges the oral promise was made by Rifkin to Flaum in-person at OmniSource's Ft. Wayne, Indiana corporate offices. No one else heard Rifkin make the alleged promise.

Flaum began his employment as scheduled in June 2004. In January 2007, Flaum contacted OmniSource's Vice President of Human Resources, Ben Eisbart, to complain that his 2006 bonus was only the minimum allowable amount of fifteen percent. Eisbart agreed to meet with Flaum to discuss the bonus, but before the meeting Eisbart contacted Flaum's superviosr, Joe Cerva, for information on Flaum's performance. According to Cerva, "Flaum was performing poorly, had for months failed to return calls to Cerva to discuss his poor performance, and [Flaum] was devoting less than even part-time hours toward his otherwise required full-time work

2

requirement. In fact, Cerva had been keeping a handwritten log for six months to document Flaum's performance problems." (Def's. Mo. S.J., Doc. 39-1 at 3) (hereinafter, "Mo.").

On February 12, 2007, Flaum and Eisbart met in OmniSource's Ft. Wayne office to discuss the bonus. The parties' accounts of the meeting differ. Flaum contends that Eisbart abruptly cut the meeting short while Flaum tried to discuss his bonus and a pay raise. Flaum also contends that Eisbart never discussed Flaum's performance problems at all. (Plf's. Resp. to Def's Mo. S.J., Doc. 50 at 10-11) (hereinafter, "Resp."). Conversely, Eisbart claims he did discuss Flaum's performance, but claims "Flaum made 'outlandish demands,' appeared manic, was insolent and insubordinate, and not only refused to discuss his inadequate hours and job performance, but declared that he no longer wanted to work, yet still wanted to be paid his salary and benefits for another thirteen years." (Mo. at 3).

Following the meeting, Eisbart sent Flaum a three page letter dated February 19, 2007, which informed Flaum that he was being placed on paid administrative leave due to what Eisbart characterized as Flaum's unusual demands and behavior at the February 12 meeting. The letter also explained OmniSource's position that Flaum had "persistently and materially failed to discharge the most basic of duties for which he was hired . . . [including his] failure to have devoted anywhere near [his] full time and attention to the performance of [his] responsibilities . . ." (Mo. at 20-21), and that such performance constituted cause for termination under the Agreement. Finally, the letter instructed Flaum to have his legal counsel contact OmniSource's counsel to discuss Flaum's "continued employment relationship." (Mo. at 4). Flaum did not respond to the letter, so Eisbart sent a second letter on March 13, 2007 informing Flaum that he

3

would be terminated for cause on April 2 if Flaum's counsel did not respond to the letter with "mitigating reasons":

> Under these circumstances, therefore, I must conclude that you do not intend to dispute my assessment and conclusions regarding your work performance.
>
> Accordingly, unless our legal counsel, Mr. Walters, hears from your legal representative or from any other third party, authorized by you on or before April 2, 2007, and unless such discussion, if any, discloses mitigating reasons why your employment should not be terminated for cause, your employment with OmniSource Corporation will in fact terminate for cause, effective on that date.

(Mo. at 4).

On March 28, 2007, Flaum's counsel responded with a short letter:

> I am aware that we have exchanged several voice mail messages in the past several days regarding the above-captioned matter. It is also my understanding that you are out of town today attending a funeral. Please note that I am scheduled to be out of the office on vacation from April 5 through April 14, 2007, and would like to have some discussions with you regarding the above-captioned-matter prior to my departure.
>
> I have had an opportunity to review correspondence sent to my client by Ben Eisbart dated February 19, 2007 and March 13, 2007, and suffice to say at this juncture my client views the circumstances in a different light.
>
> Please note that my client is still interested in maintaining his employment with OmniSource.
>
> Please feel free to call if you should have any other questions.

(Doc. 39-3 at 7).

Notwithstanding counsel's request to discuss the matter, it is OmniSource's position that Flaum never complied with its March 13 letter as instructed; i.e., by providing mitigating reasons as to why Flaum should not be terminated. As such, OmniSource intended to terminate Flaum's employment per the letter on April 2, 2007, but Flaum's actual termination "'fell through the cracks' in the course of OmniSource's being acquired by a publicly traded company in October,

2007," (Mo. at 21), thus leaving Flaum on paid administrative leave. When OmniSource discovered the oversight that December, it sent a December 28, 2007 letter to Flaum's counsel explaining that Flaum would be terminated, effective December 31.

Flaum sued OmniSource on March 19, 2010, alleging that OmniSource breached the Agreement by terminating him without cause, and seeking to enforce Rifkin's alleged oral promise through promissory estoppel. OmniSource moved for summary judgment on September 12, 2011. Flaum responded on November 15, 2011, and OmniSource replied on December 12, 2011.

## II. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2541, 91 L. Ed. 2d 202 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

**III. Discussion**

**A. Promissory Estoppel Claim**

Flaum contends that Rifkin "guarantee[d] Flaum employment until the age of sixty-five and a yearly automatic renewal of his contract free of limitations." (Resp. at 14). The promise was allegedly made when Rifkin allegedly said the contract will renew every year after the initial five year term, and when Rifkin allegedly said "Geoff, you are going to retire from OmniSource," and that the contract was "evergreen." (Resp. at 14). Flaum does not assert a legal basis to enforce the alleged promise, but instead relies on the equitable doctrine of promissory estoppel.[1] The parties agree that Indiana law governs Flaum's promissory estoppel claim.

In Indiana, a party asserting promissory estoppel has the burden of establishing: "(1) a promise by the promisor (2) made with the expectation that the promisee will rely thereon (3) which induces a reasonable reliance by the promisee (4) of a definite and substantial nature and (5) injustice can be avoided only by enforcement of the promise." *First Nat'l Bank of Logansport*

---

[1] OmniSource maintains that the alleged promise is legally unenforceable. OmniSource points out that Flaum's deposition testimony and discovery responses were ambiguous as to when the alleged promise was made, and that Flaum belatedly took the position that Rifkin made the promise *after* the parties executed the written Agreement. According to OmniSource, Flaum's lack of specificity is significant because a promise made before execution of the written Agreement would have been merged into the Agreement by virtue of its integration clause, while a promise made after execution of the Agreement would be an unenforceable modification for lack of consideration. Furthermore, regardless of when the alleged promise was made, OmniSource contends it is unenforceable under the statute of frauds because the promise could not have been performed within one year.

*v. Logan Mfg. Co.*, 577 N.E.2d 949, 954 (Ind. 1991). Flaum cannot meet this burden because he cannot demonstrate reasonable reliance on the alleged promise. Flaum argues that he

> is able to demonstrate reliance on Defendant's promise for the reason that he refrained from seeking other employment for the ten months that he was placed on administrative leave, because he was under the reasonable assumption that he would be called back to work per Rifkin's promise of guaranteed employment until April of 2020.

(Resp. at 14). Despite this assertion, Flaum offers no explanation of how it is reasonable to believe that the administrative leave, as well as multiple, unresolved letters threatening for-cause termination, would simply be set aside by a separate oral promise of "guaranteed employment" with "automatic renewal . . . free of limitations . . . ." (Resp. at 14). No reasonable jury could so find, and Flaum therefore cannot establish a claim for promissory estoppel.

**B. Breach of Contract**

Flaum contends that OmniSource breached the Agreement by terminating him without cause, steadfastly maintaining that OmniSource has not provided sufficient undisputed evidence that demonstrates Flaum's performance justified termination. OmniSource, on the other hand, does not discuss Flaum's performance as a basis for termination. Indeed, OmniSource contends that Flaum's performance is not pertinent to its motion for summary judgment. (Mo. at 1) ("[a]ny ostensible factual issues Flaum may seek to raise respecting his performance under the Agreement at this late date are neither genuine nor material as a matter of law."). Instead, OmniSource contends that Flaum is equitably estopped from suing on his termination because OmniSource detrimentally changed its position–i.e., fired Flaum–after Flaum did not rebut OmniSource's letters. Moreover, after Flaum's opposition brief assailed the sufficiency of OmniSource's performance-related evidence, OmniSource reasserted equitable estoppel, and claimed that

8

Flaum's failure to comply with the March 13 letter–i.e., Flaum's failure to respond *with mitigating reasons*–independently constituted cause for termination. (Def's. Reply to Plf's. Resp., Doc. 55 at 9) (hereinafter, "Reply") ("OmniSource has moved for judgment in its favor on Flaum's breach of contract claim *not on the ground that Flaum's job performance justified his termination* at the time he was placed on administrative leave in February 2007, but on Flaum's failure to substantively respond to two specific and extremely detailed warning letters sent to Flaum . . . .") (emphasis added). Neither of OmniSource's arguments are persuasive, and it remains disputed whether Flaum's termination was justified.[2]

OmniSource fails in its assertion that Flaum is equitably estopped from suing for breach of contract. Indiana's doctrine of equitable estoppel was developed because "one who by deed or conduct has induced another to act in a particular manner will not be permitted to adopt an inconsistent position, attitude, or course of conduct that causes injury to such other." *Town of*

---

[2]

Notably, OmniSource does not engage Flaum's extensive arguments, (Resp. at 7-12), which Flaum offers to show that there is a factual dispute regarding his job performance. Indeed, OmniSource contends that "the Court should ignore Flaum's assertion that the Court cannot grant summary judgment on Flaum's breach of contract claim . . . . OmniSource does not seek a determination that Flaum's pre-leave performance was inadequate as a matter of law . . . .). (Mo. at 17).

Despite this, Flaum contends that he was performing adequately, and further contends that he was never counseled or talked to regarding his performance, that he was never issued any discipline, that he was never given a performance review, and that OmniSource was unable to produce a single customer complaint. Further, Flaum points out that supervisor Joe Cerva's documentation of Flaum's performance problems simply consists of a list of phone calls, accompanied by cursory, intermittent notes, which OmniSource does nothing to explain except to say that "Cerva had been keeping a handwritten log for six months to document Flaum's performance problems." (Mo. at 3) (citing Cerva Log, Doc. 41 at 105-09).

Further, Flaum maintains that OmniSource has highlighted its own inability to produce performance-related evidence by adopting "inconsistent explanations as to why it terminated Flaum's employment." (Resp. at 7) ("[OmniSource] has gone back and forth between Flaum's 'bizarre demands,' his 'performance issues' and his 'refusal' to respond to [OmniSource's] March 2007 letters as the reasons for Flaum's termination.").

9

*New Chicago v. City of Lake Station ex rel. Lake Station Sanitary Dist.*, 939 N.E.2d 638, 653 (Ind. Ct. App. 2010) (citing *Brown v. Branch*, 758 N.E.2d 48, 51 (Ind. 2001)). Central to the doctrine's purpose is the desire of Indiana courts to protect against fraud, both actual and constructive. *Parmo v. Edwards*, 563 N.E.2d 595, 598-99 (Ind. 1990). Consequently, the Indiana Supreme Court has expressly held that the doctrine is available only in cases involving such fraud. *Id*. The instant matter, by contrast, carries no assertion of fraud, nor any assertion that Flaum intended to prevent inquiry, mislead investigation, hinder, or lead OmniSource to inaction. *See id*. at 599. To the contrary, Flaum's counsel's March 28 response letter expressly offered to engage in dialogue on the issue of Flaum's performance: "[I] would like to have some discussions with you regarding the above-captioned matter . . . . I have had an opportunity to review correspondence sent to my client by Ben Eisbart dated February 19, 2007 and March 13, 2007, and suffice to say at this juncture my client views the circumstances in a different light." (Doc. 39-3 at 7). Thus, the doctrine of equitable estoppel is not applicable to the instant matter because OmniSource has not demonstrated fraud.[3]

Even if equitable estoppel were applicable, OmniSource would not prevail. The party claiming equitable estoppel must show "its (1) lack of knowledge and of the means of knowledge as to the facts in question, (2) reliance upon the conduct of the party estopped, and (3) action based thereon of such a character as to change his position prejudicially." *New Chicago*, 939 N.E.2d at 653 (citing *Money Store Inv. Corp. v. Summers*, 849 N.E.2d 544, 547 (Ind. 2006)).

---

[3] OmniSource passingly asserts in a footnote that, in addition to being barred by equitable estoppel, Flaum's breach of contract claim is also barred by the equitable defense of laches. (Mo. at 24, n12). OmniSource is incorrect. Indiana's doctrine of laches only acts as a limitation on equitable relief. *New Chicago*, 939 N.E.2d at 652-53. It does not limit an action at law on a contract. *Id*.

Here, OmniSource cannot satisfy the first element. While it argues that it lacked knowledge of reasons that might mitigate Flaum's supposedly deficient performance, OmniSource cannot explain how it lacked "the means of knowledge" given that Flaum's counsel expressly offered to provide it in his March 28 letter. Thus, OmniSource fails in its assertion that Flaum is equitably estopped from suing for breach of contract.

OmniSource also fails in its assertion that Flaum's response to its letters was sufficient cause for termination. Noting that Indiana law defines "[d]ischarge for just cause" as including "refusing to obey instructions," (Reply at 17) (citing *H.C. Bay Co. v. Kroner*, 149 N.E. 184, 185 (Ind. Ct. App. 1925)), OmniSource maintains that Flaum never complied with the instructions in its March 13 letter, which stated:

> Under these circumstances, therefore, I must conclude that you do not intend to dispute my assessment and conclusions regarding your work performance.
>
> Accordingly, unless our legal counsel, Mr. Walters, hears from your legal representative or from any other third party, authorized by you on or before April 2, 2007, and **unless such discussion, if any, discloses mitigating reasons** why your employment should not be terminated for cause, your employment with OmniSource Corporation will in fact terminate for cause, effective on that date.

(Mo. at 4) (emphasis added). Flaum testified at deposition, however, that he was forbidden from having further contact with OmniSource, and that only his counsel could communicate with OmniSource personnel. (Doc. 50 at 11). Flaum further points out that his counsel did respond to OmniSource's March 13 letter by stating that he "would like to have some discussions . . . regarding the above-captioned matter," and that "suffice to say at this juncture my client views the circumstances in a different light." (Doc. 39-3 at 7). Under such facts, the Court finds it is disputable whether Flaum's response to OmniSource's letter constitutes sufficient cause for termination. *See Rochester Capital Leasing Corp. v. McCracken*, 295 N.E.2d 375, 378 (Ind. App.

11

1973) ("[W]here the facts, even though undisputed, are such that reasonable men might differ as to whether the alleged misconduct is so inconsistent with the employer-employee relationship as to justify discharge, the question is one of fact for the jury."); *accord Peterson v. Culver Educ. Found.*, 402 N.E.2d 448, 452 (Ind. Ct. App. 1980) (citing *id.*).

**IV. Conclusion**

For the reasons stated herein, Omnisource's motion for summary judgment is granted in part and denied in part. (Doc. 39). The motion is granted as to Flaum's promissory estoppel claim (Count II), and is denied as to Flaum's breach of contract claim (Count I).

IT IS SO ORDERED.

    s/ *David A. Katz*
    DAVID A. KATZ
    U. S. DISTRICT JUDGE